UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | Criminal Action No. 6:24-CR-025-CHB |
| ) | |
| v.   ) | |
| ) | **MEMORANDUM OPINION AND** |
| SAMUEL H. YOUNG,   ) | **ORDER** |
| ) | |
| Defendant.   ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Samuel H. Young's Motion to Dismiss the Indictment. [R. 30]. The United States of America filed a response, [R. 32], and Young replied, [R. 33]. The Court conducted an evidentiary hearing on the motion on January 14, 2025. [R. 74]. Therefore, the motion is ripe and ready for review. For the reasons that follow, the Court will deny Young's Motion to Dismiss the Indictment.

I.   **FACTUAL BACKGROUND**

On April 25, 2024, a grand jury indicted Young for a single violation of 18 U.S.C. § 922(g)(1). [R. 1]. In particular, the Indictment charged Young, who "had previously been convicted of a crime punishable by imprisonment for a term exceeding one year," with "knowingly possess[ing] a firearm, that is, a SCCY, CPX-2, 9 mm pistol with serial number 259174," which "was in and affecting commerce, all in violation of 18 U.S.C. § 922(g)(1)." *Id.* at 1.

On July 12, 2024, Young, through counsel, filed the pending Motion to Dismiss the Indictment. [R. 30]. Young argues that § 922(g)(1) is unconstitutional as applied to him because his prior convictions were not for violent crimes, so he "retained his right to carry a firearm" under *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022). [R. 30-1, pp. 1, 12];

[R. 30, p. 1]; *see generally* [R. 30-1, pp. 8–14]. The United States filed a response, [R. 32], and Young replied, [R. 33]. The matter was then referred to Magistrate Judge Hanly A. Ingram for a report and recommendation. [R. 34].

The subsequent history of this case is important. On August 23, 2024, before the Magistrate Judge ruled on Young's Motion to Dismiss the Indictment, Young's counsel filed a sealed motion regarding Young's competency to stand trial. [R. 38]. The Court granted the motion, ordered Young to undergo a psychiatric or psychological exam, and explained that a competency hearing would be scheduled after this exam was completed. [R. 43]; [R. 44].

On September 18, 2024, while the competency evaluation was ongoing, *see* [R. 51], Judge Ingram requested that Young file a supplement to his Motion to Dismiss the Indictment "that describes the impact" of *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) on his pending motion. [R. 52]. Young filed a Supplement to the Motion to Dismiss the Indictment addressing this decision and claiming that he was entitled to a hearing on whether he is dangerous. [R. 53]. Because Young requested an evidentiary hearing in this supplement, *id.* at 2–3, Judge Ingram ordered further briefing on whether an evidentiary hearing is required under *Williams*. [R. 57]. However, because the issue of Young's competency to stand trial remained pending, Judge Ingram ultimately vacated the deadline for this further briefing and ordered the parties to file their briefs within thirty days if Young was found competent to proceed. [R. 59].

On November 6, 2024, Judge Ingram held a hearing concerning Young's competency. [R. 62]. During his psychiatric evaluation, and during this hearing, Young insisted that he was dissatisfied with his counsel. [R. 61, pp. 7–9]; [R. 62]. Judge Ingram advised that he would hold a hearing on the potential dissatisfaction of counsel once the competency concerns were resolved. [R. 62]. On November 7, 2024, Judge Ingram recommended that this Court find Young competent

to stand trial, [R. 63], and on November 13, 2024, the Court did so by adopting Judge Ingram's findings as to Young's competency without objection. [R. 64].

On the same day that this Court deemed Young competent to stand trial, Judge Ingram scheduled a hearing to address Young's dissatisfaction with counsel. [R. 65]. At the hearing, Young, by oral motion, requested appointment of new counsel. [R. 66]; [R. 67]. After this hearing, Judge Ingram denied Young's request to be appointed new counsel, [R. 67]; however, Judge Ingram scheduled a *Faretta* hearing to further discuss Young's right to self-representation and potential waiver of the right to counsel. *Id.*; *see also Faretta v. United States*, 422 U.S. 806, 821, 835 (1975) (determining that, although the Sixth Amendment "implies a right of self-representation," "in order to represent himself, the accused must 'knowingly and intelligently' forgo [the] relinquished benefits [of counsel]" (citing *Johnson v. Zerbst*, 304 U.S. 458, 464–65 (1938))). At this *Faretta* hearing, Judge Ingram found that Young had "competently, knowingly, voluntarily, intelligently, and unequivocally waived his right to appointed counsel and asserted his right to self-representation." [R. 68, p. 1]. As a result, Judge Ingram relieved Young's appointed counsel from the case. *Id.* Young has since proceeded pro se.

While this Court originally referred Young's Motion to Dismiss the Indictment to the Magistrate Judge, [R. 34], the undersigned decided to address the motion. [R. 69]. The parties had not briefed the issue of whether *Williams* requires an evidentiary hearing, and this Court did not decide that issue. [R. 78, p. 3:8–9 (Transcript of Evidentiary Hearing) ("The Court has not ruled that a hearing is required.")]. Instead, this Court granted Young's request for an evidentiary hearing in the "interest of completeness and current posture of the case, and [because of] Mr. Young's pro se status." *Id.* at 3:9–10; *see also* [R. 69]. Leading up to the evidentiary hearing, Young filed a

document outlining the facts he believed he could present to demonstrate he is not dangerous. [R. 72].

On January 14, 2025, this Court held an evidentiary hearing, [R. 74], and, at the conclusion of the hearing, announced that Young's Motion to Dismiss the Indictment, [R. 30], was submitted to the Court. [R. 78, p. 66:1–2]. The Court now addresses the motion.

## II.   LEGAL STANDARD

A defendant may challenge the sufficiency of an indictment through a pretrial motion to dismiss. *See* Fed. R. Crim. P. 12. Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). It further provides that certain defenses—including an alleged defect in the indictment—*must* be raised by pretrial motion so long as "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). Thus, Rule 12 "and its component parts encourage district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination without trial of the general issues." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992).

Rule 12 motions are generally capable of pretrial resolution "if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976) (citation omitted); *see also United States v. Thompson*, No. 6:19-CR-22-REW-HAI, 2020 WL 4939114, at *1 (E.D. Ky. Aug. 24, 2020) (citing *Jones*, 542 F.2d at 664). However, "district courts may make preliminary findings of fact necessary to decide questions of law presented" in a motion to dismiss "so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." *Levin*, 973 F.2d at 467; *see also Jones*, 542 F.2d at 664. Accordingly, a defense raised in a Rule 12 motion is

"capable of determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Jones*, 542 F.2d at 665 (internal quotation marks omitted) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). However, when a defendant claims that the indictment's allegations "are false or untrue, this is not a question of law, but rather a fact to be tried by a jury." *United States v. Lundergan*, 5:18-CR-00106-GFVT-MAS, 2019 WL 1261354, at *2 (E.D. Ky. Mar. 18, 2019) (citation omitted).

Through Rule 12, a defendant may challenge the sufficiency of an indictment, or in other words, argue that the indictment fails to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). A defendant may also argue that an indictment is defective if it "alleges a violation of an unconstitutional statute." *United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing *In re Civil Rights Cases*, 109 U.S. 3, 8–9 (1883)); *see also United States v. Rife*, 429 F. Supp. 3d 363, 366 (E.D. Ky. 2019) (explaining that a defendant may "challenge a defect in the indictment, including its constitutionality, via a pretrial motion to dismiss" under Rule 12). When raising a constitutional challenge, the defendant may attack the underlying statute as "'unconstitutional in all of its applications,'" i.e., a facial attack. *Rife*, 429 F. Supp. 3d at 366 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). Alternatively, a defendant may raise an "as-applied challenge" by alleging "that the statute in question is unconstitutional as applied to the defendant's alleged conduct." *Id.* (citation omitted). As-applied challenges generally "involve[ ] questions of law *and* fact." *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017) (emphasis added).

## III.   ANALYSIS

As noted above, Young seeks to dismiss the Indictment charging him with a violation of 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year [i.e., a felony]," to possess a firearm. § 922(g)(1). Young argues that § 922(g)(1) is unconstitutional as applied in his case, under the Supreme Court's recent decision in *Bruen*. *See, e.g.*, [R. 30, p. 1 (citing *Bruen*, 597 U.S. 1)]; [R. 30-1, p. 1 (same)]. In that case, the Supreme Court established a two-step framework for Second Amendment inquiries. *See Bruen*, 597 U.S. at 24. First, courts must ask whether "the Second Amendment's plain text covers an individual's conduct," and, if so, under the second step, the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*; *see also United States v. Gailes*, 118 F.4th 822, 825 (6th Cir. 2024) (discussing *Bruen*).

In this case, Young only makes an as-applied argument under *Bruen*: he argues that the statute is unconstitutional as applied to him because, while he has a prior felony conviction, the offense was nonviolent. [1] [R. 30, p. 1]; *see also* [R. 30-1, pp. 8–14]; [R. 78, p. 2:19–23 (noting that any "facial challenge" has "been disposed of by the [decision in] the *Williams* case")]. This, Young

---

[1] Young notes in his Motion to Dismiss the Indictment and Memorandum in Support of Defendant's Motion to Dismiss the Indictment that he is making an as-applied challenge, rather than a facial challenge, to § 922(g)(1). [R. 30, p. 1]; [R. 30-1, p. 1]. Because the Sixth Circuit has made clear § 922(g)(1) is constitutional on its face, to the extent Young brings a facial challenge to the statute, the Court will deny it. *Williams*, 113 F.4th at 657 ("[O]ur nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous. Section 922(g)(1) is an attempt to do just that. Because . . . most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge."); *see also United States v. Witherspoon*, 6:23-CR-39-REW-HAI-1, 2024 WL 4819433, at *1 (E.D. Ky. Nov. 18, 2024) (disposing of the defendant's facial challenge to § 922(g) "in short order" due to the *Williams* ruling); *United States v. Stewart*, No. 3:24 CR 109, 2024 WL 4476109, at *1 (N.D. Ohio Oct. 11, 2024) (explaining that "*Williams*, therefore, foreclose[d] [the defendant's] facial challenge to § 922(g)(1)"); *United States v. Dorsey*, No. 24-5129, 2024 WL 4250319, at *1 (6th Cir. Sept. 20, 2024) (relying on *Williams* to deny the defendant's argument that § 922(g)(1) violates the Second Amendment on its face); *United States v. Partee*, No. 24-5114, 2024 WL 4224982, at *1 (6th Cir. Sept. 18, 2024) (same). The Court noted this during the evidentiary hearing on January 14, 2025, as well. [R. 78, p. 2:19–23].

argues, means that "18 U.S.C. § 922(g) cannot be applied to [him]." [R. 30-1, p. 14]. Young seeks to bolster his arguments by citing to *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), and contrasting the circumstances of his previous criminal history with that of the defendant in *United States v. Rahimi*, 602 U.S. 680 (2024). [R. 30-1, pp. 7–10, 12–14]. The Court need not examine *Duarte*, an out-of-circuit case, since that judgment was vacated in light of the Supreme Court's recent ruling in *Rahimi*. *United States v. Duarte*, 108 F.4th 786 (Mem) (9th Cir. 2024) (vacating opinion and ordering rehearing en banc).[2] In *Rahimi*, the Supreme Court considered a different subdivision of § 922(g) that prohibits any person subject to certain court orders (e.g., a domestic violence restraining order) from possessing firearms. *See* 602 U.S. at 693–700; 18 U.S.C. § 922(g)(8). The Court rejected Rahimi's facial challenge and held that this provision survived the *Bruen* test, and people subject to domestic violence restraining orders may be categorically disarmed without violating the Second Amendment. *See Rahimi*, 602 U.S. at 693–700.

While the *Rahimi* analysis focused on § 922(g)(8), the Sixth Circuit has since considered whether the subsection at issue in this case, § 922(g)(1), could also survive the *Bruen* test. In *Williams*, the Sixth Circuit utilized *Bruen*'s two-step test and ultimately concluded that "§ 922(g)(1) is constitutional on its face and as applied to dangerous people." *Williams*, 113 F.4th at 662–63. The Sixth Circuit issued this decision after Young filed his motion. The Magistrate Judge therefore asked Young to address the impact of *Williams* and other post-*Williams* cases on Young's as-applied attack to § 922(g)(1). [R. 52]. In response, Young's former counsel acknowledged that the *Williams* decision does not help his case but argued,

> Young maintains that *Williams* was incorrectly decided and his alleged possession of a firearm after conviction for a non-violent drug trafficking offense is totally protected by the Second Amendment. . . . Young acknowledges that *Williams* is binding on this Court and must be followed. Nevertheless, he raises the arguments

---

[2] *Duarte* was vacated a few days after Young filed his Motion to Dismiss the Indictment.

- 7 -

set forth in the Memorandum to preserve the issue for appeal and the possibility of a future change in the law.

[R. 53, p. 1].

Now proceeding pro se, Young argues that the *Williams* opinion holds "that nondangerous felons should have their Second Amendment rights preserved." [R. 78, p. 15:8–11]. Further, Young posits that he has "presented enough evidence to prove [he is] not dangerous to the courts and a 922(g) federal gun charge is not valid in [his] particular case." *Id.* at 15:11–13. On the other hand, the United States argues that "18 U.S.C. § 922(g)(1), as applied to Young, does not violate the Second Amendment," and the cases on which he relies "do not support the relief that he seeks." [R. 32, pp. 1, 3].

To evaluate Young's as-applied challenge, the Court turns to *Williams* for guidance. *See United States v. Witherspoon*, 6:23-CR-39-REW-HAI-1, 2024 WL 4819433, at *1 (E.D. Ky. Nov. 18, 2024) ("*Williams* establishes a framework for resolving as-applied Second Amendment challenges to § 922(g)."). There, the Sixth Circuit explained, "[our nation's] history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous." *Williams*, 113 F.4th at 663. The burden rests on the individuals in the disarmed class "to prove they aren't dangerous in order to regain their right to possess arms." *Id.* at 662; *see also Witherspoon*, 2024 WL 4819433, at *1 (explaining that, because felon-in-possession laws are "'presumptively lawful,'" a defendant "must offer sufficient evidence to rebut the presumption that § 922(g) is constitutional, as applied to him" (quoting *Williams,* 113 F.4th at 662–63)). In considering whether this burden has been met, courts "must focus on each individual's specific characteristics." *Williams*, 113 F.4th at 657.

Ultimately, "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 660.

As this Court has previously noted, "[t]he touchstone of the analysis is the defendant's criminal record—any putatively disqualifying felony(ies) and other cognizable records." *Witherspoon*, 2024 WL 4819433, at *2. Thus, "[t]he 'entire criminal record—not just the predicate offense' warrant focus." *Id.* (citing *Williams*, 113 F.4th at 657). Indeed, "to date, most courts are resolving challenges on the record alone." *Id.* (citation omitted).[3] This is because "certain categories of past convictions are highly probative of dangerousness." *Williams*, 113 F.4th at 658.

In *Williams*, the Sixth Circuit outlined these "categories" of crimes in making the dangerousness determination,

> [a] person convicted of a crime is "dangerous," and can thus be disarmed, if he has committed (1) a crime "against the body of another human being," including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary. An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous.

*Id.* at 663; *see also id.* at 658 ("While we ultimately reserve this question for another day, there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question."). The Court has since made clear, however, that "it was not mandating a categorical analysis, but instead making 'the commonsense point' that the commission of some offenses 'will more strongly suggest' dangerousness." *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024) (quoting *Williams*, 113 F.4th at 660).

---

[3] Indeed, the Sixth Circuit recently affirmed a district court's dangerousness assessment in *United States v. Morton*, 123 F.4th 492 (6th Cir. 2024), where the district court relied on the record (e.g., state-court judgments) in reaching its decision. On appeal, the defendant argued that the district court did not perform a sufficiently intensive inquiry on the dangerousness issue, but the Sixth Circuit disagreed. *Id.* at 500.

In *Williams*, for example, the defendant's criminal record included two felony counts of aggravated robbery, in which he robbed two individuals at gunpoint, and attempted murder. *Williams*, 113 F.4th at 662. Given the nature of these prior convictions, the Court had "little trouble concluding that Williams [was] a dangerous felon," and that he had failed to satisfy his burden of demonstrating otherwise. *Id.*; *see also United States v. Parham*, 119 F.4th 488, 496 (6th Cir. 2024) (ruling similarly where the defendant's "criminal record contain[ed] numerous violent felonies, including two homicide-related convictions"); *United States v. Goins*, 118 F.4th 794, 804–05 (6th Cir. 2024) (ruling similarly where defendant had history of driving-under-the-influence convictions).

As noted above, the Sixth Circuit also identified a category of crimes "that inherently pose[ ] a significant threat of danger," such as "drug trafficking." *Williams*, 113 F.4th at 663. In *Witherspoon*, for example, the defendant had "amassed five distinct felony convictions, mostly characterized as drug trafficking crimes" prior to being charged under § 922(g). 2024 WL 4819433, at *3. The court had no difficulty in finding Witherspoon "dangerous under *Williams*." *Id.* The defendant tried to argue that his prior convictions for drug trafficking were not dangerous because "none of those crimes resulted in direct physical harm to another person," but the court was not persuaded. *Id.* Instead, it emphasized that,

> [c]learly, whether violent or not, *drug trafficking implicates a level of dangerousness*. As *Williams* conceived of it, trafficking does "not always involve an immediate and direct threat of violence against a particular person," but most such crimes "put someone's safety at risk, and thus, justify a finding of danger."

*Id.* (citing *Williams*, 113 F.4th at 659) (emphasis added). The court also warned that it would be incredibly difficult for a defendant to show a drug trafficking offense is not dangerous: "[i]f there is a non-dangerous drug trafficking conviction under *Williams*, it has not surfaced." *Id.* at *4.

In the present case, Young was previously convicted of a felony count of marijuana trafficking in Ohio. [R. 30-2 (Ohio State Court Judgment)]. Based on the evidence of record, the Court finds that this prior conviction for marijuana trafficking falls under the second class of prior felonies discussed in *Williams*: "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking." 113 F.4th at 663; [R. 30-2].[4] *Williams* recognized the inherent dangers involved in drug trafficking (even "non-violent" drug trafficking): "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." 113 F.4th at 659 (quoting *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (discussing routine pre-trial detention of drug dealers on dangerousness grounds, even when the individual defendant has not engaged in violence) (citation omitted))); *United States v. Young*, No. 3:98-CR-00038-13, 2020 WL 6702871, at *3 (M.D. Tenn. Nov. 12, 2020) ("The nature of his danger is not only from violence, it is also from drug trafficking and directing others in drug trafficking. Both create further and independent dangers to the community. . . ." (citations omitted)). Further, "district courts facing *Williams* challenges by defendants with only drug trafficking convictions have uniformly found the particular defendant dangerous." *Witherspoon*, 2024 WL 4819433, at *4 (collecting cases). Given the inherent dangerousness involved in this serious drug offense, the Court cannot ignore the nature of this prior conviction.

As previously noted, per *Williams*, courts may "consider a defendant's entire criminal record," including "judicially noticeable information—such as prior convictions" when assessing dangerousness. 113 F.4th at 659–60. As such, the Court also notes that at the same time Young was indicted, pleaded guilty, and sentenced on the marijuana trafficking charge, he also pleaded guilty and was sentenced for possession of marijuana and possessing a defaced firearm. [R. 30-2].

---

[4] The United States also introduced this state court judgment as an exhibit during the evidentiary hearing held on January 14, 2025.

Indeed, the Ohio State Court Judgment makes clear that Young was charged as follows: Count 1, Trafficking in Marijuana; Count 2, Possession of Marijuana; and Count 3, Possessing a Defaced Firearm. *Id.* at 1–2. He pleaded guilty to all three charges and was sentenced at the same time. *See generally id.* While the conviction for possession of a defaced firearm was a misdemeanor under Ohio law, as Young points out, [R. 30-1, pp. 2–3], possession of a defaced firearm puts the community at risk and further supports a finding of danger. This danger is reflected in the serious penalties for a violation of the corresponding federal charge under 18 U.S.C. § 922(k), which prohibits the possession of a defaced firearm. *See* U.S.S.G. 2K2.1(b)(4) (outlining the increase to the base offense level for a defaced firearm). These additional convictions directly inform the danger calculus. The Court finds that Young's criminal history demonstrates dangerousness.

When the Court considers the facts of Young's prior convictions found in the Ohio State Court Judgment, such information further supports the Court's dangerousness determination. Though sufficient here as outlined above, the Court is not confined to the fact of conviction alone and can consider how the offense was committed using "judicially noticeable information." *Morton*, 123 F.4th at 499 ("[The Court is] not confined to the fact of conviction alone, but may consider how an offense was committed." (quoting *Williams*, 113 F.4th at 659–60)). *United States v. Morton* is particularly illustrative. In that case, the Sixth Circuit affirmed the district court's finding of dangerousness and determined that "[t]he district court had access to the state-court judgments for these convictions, which were attached as exhibits to [the defendant]'s memorandum supporting his motion to dismiss. Some of these judgments explicitly referred to the nature of the offense as dangerous or violent." *Id.* at 500 (internal citations and quotation marks omitted).

Similarly, here, the Ohio State Court Judgment details why, although Young received a suspended sentence, the state court determined that the prison terms for Counts 1 and 3 would run "consecutively" with any sentence imposed for a violation of probation. [R. 30-2, p. 4]. Specifically, the state court found that "consecutive sentences are necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the *danger* the offender poses to the public." *Id.* at 5 (emphasis added); *see* Ohio Rev. Code Ann. § 2929.14(C)(4) (West 2024). Additionally, under § 2929.14(C)(4), the state court found one or more of the following factors were present:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

§ 2929.14(C)(4)(a)–(c). The state court's finding that one or more of the factors under § 2929.14(C)(4) was present further bolsters this Court's danger determination. As previously stated, Young was indicted and sentenced on all three counts at the same time. *See* [R. 30-2]. Further, as part of Young's sentence for the three counts—marijuana trafficking, possession of marijuana, and possession of a defaced firearm—Young agreed to "forfeit his interest in the Smith & Wesson Revolver, Silver Cobra 0.380 pistol, and the IMI Uzi" to local police, along with $42,687 in U.S. Currency. *Id.* at 4. The judicially noticeable facts underlying Young's prior convictions further support his dangerousness.

Young argues that, because marijuana possession is now legal in Ohio, his prior marijuana-related convictions are "no longer [ ] felon[ies] and considered nondangerous in Ohio."[5] [R. 78, p. 17:1–5]. Therefore, Young argues, the felony "marijuana charge would not be seen as dangerous in Ohio right now, which negates the dangerousness of [him] in general." *Id.* at 9:16–18. The United States contends that even if Ohio has legalized the possession of marijuana to some degree, "[i]t continues to be illegal to traffic marijuana." *Id.* at 54:22–23. The Court agrees with the United States' argument.

Chapter 3780 of the Ohio Revised Code concerns "Adult Use Cannabis Control." Ohio Rev. Code Ann. §§ 3780.01–3780.99 (West 2023). Under § 3780.36, the possession, transport, or transfer of marijuana is limited to 2.5 ounces (70.8738 grams) for any form excluding adult use extract and 15 grams for adult use extract form. If a person "possesses an amount of cannabis greater than [these] limits," their conduct is subject to prosecution under § 2925.11 of Ohio's Revised Code, a criminal drug offense statute which remains in effect. Ohio Rev. Code Ann. §§ 3780.99, 2925.11 (West 2023). Young's verified criminal history specifies that he was convicted of a violation of § 2925.11 for possession of marijuana; in particular, he was convicted of possessing between 1,000 and 5,000 grams of marijuana. *See* [R. 30-2]; § 2925.11(C)(3)(d). This amount exceeds the limits imposed by § 3780.36 and would still subject Young to § 2925.11's criminal provisions for drug offenses. Moreover, contrary to Young's argument, Ohio's legalization of marijuana for personal use does not equate to the legalization of marijuana trafficking. There is no provision in Chapter 3780—or anywhere in the Ohio Revised Code—that

---

[5] Young also argues that he is "not [a] major or a serious drug trafficker," since he was not charged with a federal drug trafficking crime and only charged with a state drug trafficking crime. [R. 78, pp. 12:20–13:8]. That has no bearing on the Court's finding that Young is dangerous. *See generally United States v. Hales*, No. 23-CR-20645, 2024 WL 5168632, at *4 (E.D. Mich. Dec. 19, 2024) ("[The defendant's] role was not peripheral to the drug trafficking operation; however small it may or may not have been, he was central to the sales. Drug trafficking is a presumptively dangerous felony; it is the defendant's burden to overcome that presumption.").

legalizes the trafficking of marijuana in Ohio. *See* §§ 3780.01–3780.99. Thus, the Court rejects Young's argument that Ohio's legalization of adult use marijuana means that his marijuana convictions "would not be seen as dangerous in Ohio right now." [R. 78, p. 9:16–17]. Marijuana trafficking remains a crime in Ohio, implicates a level of dangerousness, and justifies a finding of dangerousness. *See Williams*, 113 F.4th at 659, 663.

Young further attempts to prove his non-dangerousness by relying on investigator Carl Christiansen's interviews with his family and former partners. In *Witherspoon* the court considered how a report by Christiansen containing "family vouching" may impact the dangerousness determination under *Williams*. *Witherspoon*, 2024 WL 4819433, at *5. According to the court, the report had no meaningful impact, given that Witherspoon's prior criminal history provided a clear indication of his dangerousness. *Id.* As the *Witherspoon* court explained, "[m]ost people are capable of avoiding crime for the duration of work shifts or in the context of specific familial relationships," so the court "[did] not view the offered proof as diminishing, to any significant degree, the dangerousness reflected in the enumerated felonies." *Id.* The same is true here. While Young has put forward Christiansen's interviews with two of his former partners, one former partner's mother, and Young's mother as evidence that he is not dangerous, their testimony does not diminish "the dangerousness reflected" in Young's prior criminal history, especially when those charges involve drug trafficking and possession of a defaced firearm. *Id.*; [R. 30-2]; *see also* [R. 78, pp. 6:4–9:8]; [Def.'s Ex. 1 (Advanced Investigative Solutions Inc. Interview Reports)]. Notably, two of the interviews mention Young's prior state convictions, *see* [Def.'s Ex. 1], and one interview specifies that his prior conviction stemmed from "law enforcement . . . [finding] about four pounds of [marijuana] and also [ ] a gun in the house." *Id.* at 1.

Finally, the Court notes that during the evidentiary hearing, Young argued that additional factual circumstances concerning his prior convictions demonstrate that he is not dangerous. *See* [R. 78, pp. 50:6–53:5]. In this case, the judgment containing Young's previous convictions is enough to determine dangerousness, *see* [R. 30-2], and the Court need not determine whether it can consider the circumstances underlying his prior convictions based on evidence or facts not contained within the Ohio State Court Judgment or that are not "judicially noticeable." *See United States v. Norris*, No. 3:23-CR-572, 2024 WL 4816246, at *4–5 (N.D. Ohio Nov. 18, 2024) (declining to consider factual assertion that went beyond the information available in the defendant's records of his prior convictions because those facts were not "judicially noticeable"). But regardless, if the Court were to consider additional evidence or proffer concerning the circumstances of those prior convictions, specifically, Young's proffer at the hearing,[6] *see* [R. 78, pp. 50:6–53:5], the testimony of Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent John Barnett, *see id.* at 26:17–49:12, and the Pickerington police report,[7] *see generally* [Pl.'s Ex. 2 (Report of Investigation)], those materials only bolster this Court's finding on dangerousness. The police report, which Barnett discussed at the evidentiary hearing, described how officers responded to a domestic disturbance involving Young, and in a subsequent search of his home, officers located "several pounds of marijuana," along with $42,000 in U.S. currency "and three firearms," one of which had an "obliterated" serial number. [R. 78, pp. 38:20–23, 39:11–15, 40:6–9]; *see generally* [Pl.'s Ex. 2]. And in Young's proffer at the evidentiary hearing, he did not dispute that these items were found at his "residence," *see* [R. 78, pp. 51:5–53:5];

---

[6] Young only gave a proffer at the hearing and did not testify. *See* [R. 78, pp. 50:6–53:5].

[7] *Williams* notes only that a court may consider "judicially noticeable information." 113 F. 4th at 660. Since the *Williams* decision, some district courts have hesitated to rely on state pre-sentencing reports ("PSR") or police reports "at face value," since they "may contain untested accusations and hearsay." *United States v. Morris*, No. 2:24-CR-20339-2, 2025 WL 224685, at *3 (E.D. Mich. Jan. 16, 2025) (citing *United States v. Johnson*, No. 2:23-CR-20569, 2025 WL 226957, at *3–4 (E.D. Mich. Jan. 16, 2025)).

instead, Young attempted to minimize the value of the marijuana found during the search and to explain that the defaced firearm was an "antique" that he had accepted as payment from a friend. *See id.* Even accepting Young's proffer, this information does not change the Court's decision as to Young's dangerousness.

The Court also notes that, at the evidentiary hearing, the parties agreed to focus their arguments concerning Young's dangerousness on the prior convictions, rather than the factual circumstances underlying the instant offense. *Id.* at 43:22–44:21. Therefore, the Court has no need to determine whether it may consider the facts leading to Young's indictment for the instant action under *Williams*. *Compare United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025) ("In determining [the defendant's] dangerousness, then, we look to the offense conduct . . . as well as [his] previous convictions. . . ."), *and United States v. David*, No. 2:23-CR-20626, 2025 WL 475842, at *5 (E.D. Mich. Feb. 12, 2025) (relying on *Fordham* to consider the facts underlying the charged offense), *with United States v. Johnson*, No. 2:23-CR-20569, 2025 WL 226957, at *4 (E.D. Mich. Jan. 16, 2025) ("[T]his Court will also not consider the allegations underlying the instant charges against [the defendant]."). Even without considering the facts of the instant offense, the Court finds that Young's criminal record renders him dangerous under *Williams*, and he has failed to overcome that presumption. *See generally Witherspoon*, 2024 WL 4819433, at *5. As such, § 922(g) is constitutional as applied to him in this case.

In sum, an individualized assessment of Young's prior convictions (particularly his state drug trafficking conviction and conviction for possession of a defaced firearm) informs the Court on the dangerousness determination. Based on Young's prior convictions for marijuana trafficking, possession of marijuana, and possession of a defaced firearm, the Court finds him dangerous under *Williams*. Young has failed to overcome § 922(g)'s presumption of constitutionality, and the Court

finds the § 922(g) charge is constitutional as applied to him. As a result, the Court will deny Young's Motion to Dismiss the Indictment.

IV. **CONCLUSION**

For the reasons set forth above, the Court will deny Defendant Young's Motion to Dismiss the Indictment, [R. 30].

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant Samuel H. Young's Motion to Dismiss the Indictment, [**R. 30**], is **DENIED**.

2. Pursuant to the Court's previous order, [**R. 76**], the United States **SHALL FILE** a response **within seven (7) days** of the entry of this Order that discusses the merits of Defendant Young's motion requesting additional time to file defensive motions, [**R. 77**].

This the 26th day of February, 2025.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY